**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**JERRY EDWARDS,**

       **Plaintiff,**

**v.**                             **Case No. 8:25-cv-02399-AAS**

**PARALLEL PRODUCTS
OF FLORIDA, LLC,**

       **Defendants.**
_____/

## <u>ORDER</u>

Defendant Parallel Products of Florida, LLC (Parallel) moves to dismiss Plaintiff Jerry Edwards's Amended Complaint. (Doc. 31). Mr. Edwards responded in opposition to Parallel's motion. (Doc. 36).

## I.    BACKGROUND

According to the amended complaint, Mr. Edwards began his employment with Parallel in June 2024. (Doc. 25, p. 2). Mr. Edwards alleges that during his employment, a manager, Hiram Rodriguez, referred to him and other employees as "DAN's." (*Id.,* p. 3). Mr. Edwards alleges that Mr. Rodriguez explained the term "DAN" to mean "dumb ass nigger." (*Id.*).

Mr. Edwards also alleges that Mr. Rodriguez engaged in sexually explicit conduct and comments towards Mr. Edwards. Specifically, Mr. Edwards claims

1

that Mr. Rodriguez slapped his genitals and stated, "you better want my nuts in your mouth if you want to keep your job," and "how do my nuts taste?" (*Id.*).

Mr. Edwards alleges that on September 13, 2024, after Mr. Rodriguez again referred to employees as "DAN's," Mr. Edwards contacted "Angelo" at Vertex Global Solutions (Vertex) to lodge a formal complaint.[1] (*Id.*, p. 4). Two days later, on September 15, 2024, Mr. Edwards alleges that he reported his concerns to Kerrie O'Rourke in Human Resources (HR). (*Id*). Mr. Edwards further claims that a co-worker, Donovan Busch, told him to "get on board" with Mr. Rodriguez or he would be fired. (*Id*). Mr. Edwards claims that another employee, "Ivan," encouraged others to say Mr. Edwards was lying about Mr. Rodriguez's comments. (*Id.*).

On September 23, 2024, Mr. Edwards was terminated. (*Id.*, pp. 4–5). He filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC Charge) and the Florida Commission on Human Relations, and 180 days have passed since he filed the EEOC Charge. (*Id.*, pp. 2, 37-1, 37-2). A right-to-sue letter was issued on June 13, 2025. (Doc. 37-2).

Mr. Edwards's amended complaint asserts ten counts against Parallel, alleging hostile work environment, racial discrimination, sexual harassment,

---

[1] Mr. Edwards was a temporary worker at Parallel, employed through a nonparty staffing agency, Vertex. (Doc. 31, n. 1).

and retaliation for opposing the alleged racial discrimination and sexual harassment. (Doc. 25). These claims are brought under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the Florida Civil Rights Act, Chapter 760, Florida Statutes (FCRA). (Doc. 25). Parallel moves to dismiss Mr. Edwards's amended complaint as legally deficient and fatally flawed. (Doc. 31). Mr. Edwards responded in opposition. (Doc. 36).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint may be attacked—and dismissed—for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a 12(b)(6) motion to dismiss, the court applies the plausibility standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 679.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the [c]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When deciding a Rule 12(b)(6) motion to dismiss, review is generally limited to the four corners of the complaint. When

reviewing a complaint for facial sufficiency, the court "must accept [a] [p]laintiff's well pleaded facts as true and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. ANALYSIS

### A. Counts I–III

Mr. Edwards brings claims for race-based hostile work environment under § 1981, Title VII, and the FCRA (Counts I–III). Courts analyze hostile work environment claims under § 1981, Title VII, and the FCRA using the same framework. *Potwin v. Dynasty Bldg. Sols., LLC*, No. 8:24-CV-174-KKM-CPT, 2024 WL 4881385, at *2 (M.D. Fla. Nov. 25, 2024); *Bell v. Liberty Nat'l Life Ins. Co.*, No. 22-11015, 2023 WL 5624535, at *3 (11th Cir. Aug. 31, 2023); *Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1283 & n.3 (11th Cir. 2018); *see Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 n.6 (11th Cir. 2015) (per curiam) ("[T]he same analytical framework and proof requirements that apply to employment discrimination claims under Title VII also apply to discrimination claims under Section 1981 and the FCRA.").

To withstand a motion to dismiss, a plaintiff asserting race discrimination under § 1981, Title VII, or the FCRA must plead sufficient factual matter, accepted as true, to plausibly suggest intentional race discrimination. *Potwin*,

4

2024 WL 4881385, at *2 (citing *Surtain*, 789 F.3d at 1246). A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993). To state a claim for a hostile work environment claim, a plaintiff must allege:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . .; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *Satchel v. Sch. Bd. of Hills. Cnty.*, 251 F. App'x 626, 630 (11th Cir. 2007).

The court focuses on the third element—whether the alleged harassment occurred because of Mr. Edwards's race. Mr. Edwards does not identify his own race in the amended complaint, but implies he is white by referencing statutory protections afforded to Caucasian individuals. (Doc. 25, p. 7). Mr. Edwards later confirms he is white in his response to Parallel's motion (Doc. 36, p. 5). Mr. Edwards alleges that Mr. Rodriguez referred to employees, including himself, as "DAN's." (Doc. 25, p. 3). Although the alleged language constitutes

a racial slur, the slur is not directed toward Mr. Edwards based on *his* race.

It is a fundamental principle that not all offensive conduct or language rises to the level of actionable discrimination under Title VII. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010). Rather, a plaintiff must "establish that they were subject to at least some harassment based on their own race," not just exposed to offensive language concerning others. *Melton v. I-10 Truck Ctr. Inc.*, 166 F.4th 905, 919 (11th Cir. 2026). Thus, derogatory remarks concerning other racial groups—even if offensive—do not necessarily establish a racially hostile work environment for a plaintiff who does not belong to that group. *Belser v. City of Decatur*, No. 1:06-CV_1454-TCB/AJB, 2007 WL 9701528 (N.D. Ga. Dec. 12, 2007), *report and recommendation adopted sub nom. Belser v. City of Decatur Police Dep't*, No. 1:06-CV_1454-TCB, 2008 WL 11406005 (N.D. Ga. Jan 7, 2008) (concluding that the proper inquiry focuses on whether the alleged comments targeted the plaintiff's race rather than the race of others, where an African American plaintiff claimed harassment after being called "white trash" and "spic").

Conduct or language that is "based on" one's race is considered in a hostile work environment claim. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 584 (11th Cir. 2000), *abrogated on other grounds by Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L.Ed.2d 345 (2006).

6

"Innocuous statements or conduct, or boorish ones that do not relate to the [race] of the . . . offended party (the plaintiff), are not counted." *Id.* at 583; *see also Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301–02 (11th Cir. 2007) ("Title VII does not prohibit profanity alone, however profane. It does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category . . .").

Here, Mr. Edwards does not allege that Mr. Rodriguez's comments were directed at him because he is white, nor does he allege that he belongs to the racial group referenced by the slur. Instead, the amended complaint suggests that the term was used broadly toward multiple employees, without regard to their individual races. (Doc. 25). Such allegations undermine any inference that the conduct was motivated by racial animus toward Mr. Edwards himself based on *his* race.

Accordingly, Mr. Edwards fails to plausibly allege a race-based hostile work environment claim under § 1981, Title VII, and the FCRA. Accordingly, Parallel's motion to dismiss Counts I-III is **GRANTED**.

### B.    Counts IV–VI

Mr. Edwards brings a claim for retaliation under § 1981, Title VII, and the FCRA for opposing racial discrimination (Counts IV–VI). Courts analyze

7

retaliation claims under § 1981, Title VII, and the FCRA using the same framework. *Burstein v. Emtel, Inc.*, 137 F. App'x 205, 208 n. 7 (11th Cir. 2005) ("Florida courts apply federal case law interpreting Title VII to FCRA claims."); *Smith v. Orange Cnty. Sch. Bd.*, No. 604CV1811ORL28DAB, 2006 WL 8439525, at *3 (M.D. Fla. Nov. 29, 2006) ("A § 1981 claim and a Title VII claim are analyzed under the same framework.").

To establish a prima facie case of retaliation, the plaintiff must show that he "(1) engaged in a statutorily protected activity; (2) that [he] suffered a materially adverse employment action; and (3) that there was a causal link between the two." *Lee v. HQM of Fort Myers, LLC*, No. 2:11-CV-714-FTM-99, 2012 WL 3545700, at *2 (M.D. Fla. July 26, 2012), *report and recommendation adopted*, No. 2:11-CV-00714-UA-DNF, 2012 WL 3548062 (M.D. Fla. Aug. 16, 2012).

### 1.    Statutorily Protected Activity

Complaining of racial discrimination is considered a statutorily protected activity. *See Munnings v. Fedex Ground Package Sys., Inc.*, No. 6:07CV282-ORL-19KRS, 2008 WL 1849003, at *24 n. 17 (M.D. Fla. Apr. 22, 2008). Additionally, "filing a complaint is statutorily protected activity." *Miller v. Roche Sur. & Cas. Co.*, 502 F. App'x 891, 893 (11th Cir. 2012). Filing a complaint requires "some degree of formality . . . in order that the employer

has fair notice that an employee is lodging a grievance." *Id.* This requirement is to ensure that "an employer who does not (or should not) know an employee has made a complaint could [not] discriminate because of that complaint." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011).

Mr. Edwards plausibly alleges that he engaged in a statutorily protected activity in opposing what he perceived to be racially discriminatory conduct in the workplace. Specifically, Mr. Edwards alleges that he complained about Mr. Rodriguez's repeated use of racially offensive language, including reporting the behavior to both the staffing agency's HR department and Parallel's HR department. (Doc. 25, p. 4). Mr. Edwards further claims that Parallel's HR representative, Ms. O'Rourke, took notes during their conversation. (*Id.*). These allegations demonstrate sufficient formality to place the employer on notice of Mr. Edwards's complaints. *See generally Komer v. Corizon Health, Inc.*, No. 8:18-CV-2148-T-30AEP, 2018 WL 4503023, at *1 (M.D. Fla. Sept. 20, 2018) (finding that the plaintiff's complaints to the employer's HR department on numerous occasions were a protected activity). Parallel also does not meaningfully dispute that Mr. Edwards engaged in protected activity. Thus, the court finds such complaints constitute protected activity under § 1981, Title VII, and the FCRA.

### 2.    Materially Adverse Employment Action

Parallel does not dispute that Mr. Edwards suffered adverse employment action. "Undoubtedly, termination is an adverse employment action." *Rohrer v. AFC Cable Sys. Inc.*, No. 8:06-CV-1503-T-27TBM, 2008 WL 11385397, at \*9 (M.D. Fla. Jan. 2, 2008). Mr. Edwards was terminated on September 23, 2024. (Doc. 25 pp. 4–5). Thus, he suffered a materially adverse employment action under § 1981, Title VII, and the FCRA.

### 3.    Causal Link Between the Protected Activity and Adverse Employment Action

To establish causation, the plaintiff must show that the employer was aware that the plaintiff engaged in protected conduct. *Uche v. St. Lukes-St. Vincents Healthcare, Inc.*, No. 3:12-CV- 865-J-32-JBT, 2015 WL 476178, at \*7 (M.D. Fla. Feb. 5, 2015); *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Once awareness is established, "mere proximity in time may be sufficient to establish relatedness where the temporal relationship is very close." *Uche*, 2015 WL 476178, at \*7; *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010); *Freeman v. Fed. Exp. Corp.*, No. 804CV2481TBM, 2006 WL 563123, at \*9 (M.D. Fla. Mar. 8, 2006) (quoting *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). *Compare Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) (finding that temporal relationship of up to a month sufficient to prove relatedness), *with*

10

*Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (determining that a three-to-four-month disparity was insufficient to establish relatedness).

Parallel was aware that Mr. Edwards engaged in protected conduct by filing an HR complaint. *See Essick v. Fid. Nat'l Info. Servs., Inc.*, No. 3:14-CV-949-J-34-JRK, 2016 WL 3615677, at *8 (M.D. Fla. July 6, 2016) (finding that the employer was "plainly aware" of the protected conduct when the employee filed an HR complaint). Mr. Edwards was terminated eight days after he reported his concerns to HR. (Doc. 25, pp. 4–5). This temporal proximity is enough to establish relatedness for purposes of surviving a motion to dismiss. Thus, the court finds that Mr. Edwards sufficiently alleged a causal connection between his protected activity and termination.

Accordingly, having plausibly alleged all three elements, Mr. Edwards's amended complaint states a claim for retaliation under § 1981, Title VII, and the FCRA. Parallel's motion to dismiss Counts IV–VI is **DENIED**.

### C.    Counts VII and VIII

Mr. Edwards brings a claim for sexual harassment under Title VII and the FCRA (Counts VII and VIII). The Court analyzes Title VII and FRCA claims under the same framework. *Gamboa v. Am. Airlines*, 170 F App'x 610, 611 (11th Cir. 2006).

11

### 1.    Exhaustion of Administrative Remedies

The parties dispute whether Mr. Edwards's sexual harassment allegations—particularly those involving *multiple* supervisors or co-workers, rather than one individual—fall within the scope of the EEOC Charge. (Doc. 37-1). Parallel argues these are new and were "not set forth in" the EEOC Charge. (Doc. 31, pp. 13–14). Mr. Edwards responds that the allegations are reasonably related to and would naturally grow out of the EEOC Charge's factual allegations of sexual harassment. (*Id.*, pp. 15–16). Mr. Edwards states that his "Amended Complaint virtually mirrors" the EEOC Charge. (Doc. 36 p. 15).

A "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of [a] charge of discrimination." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000). At the same time, judicial complaints "may encompass any kind of discrimination like or related to the allegations contain[ed in] the charge." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (referring to *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). Consistent with this principle, "[c]ourts are . . . 'extremely reluctant to allow procedural technicalities to bar claims brought under (Title VII).'" *Gregory*, 355 F.3d at 1280 (quoting *Sanchez*, 431 F.2d at 460–61). Accordingly,

12

the proper inquiry here is whether Mr. Edwards's amended complaint was like or related to, or grew out of, the allegations contained in the EEOC charge. *See Gregory*, 355 F.3d at 1280. Judicial claims that "amplify, clarify, or more clearly focus" the EEOC allegations are permissible, whereas "'allegations of new acts of discrimination are inappropriate.'" *Brooks v. CSX Transp., Inc.*, No. 3:09-CV-379-J-32HTS, 2009 WL 3208708, at *5 (M.D. Fla. Sept. 29, 2009).

Mr. Edwards's amended complaint alleges the same type of discrimination and series of events described in the EEOC Charge. In the EEOC Charge, Mr. Edwards checked boxes for sex discrimination and retaliation and explicitly wrote in "sexual harassment." (Doc. 37-1). Mr. Edwards stated that "[Mr.] Rodriguez would walk by me and slap my front private parts with his hands. He would also make comments to me such as 'you better want my nuts in your mouth if you want to keep your job' or 'how do my nuts taste?'" *Id.* The amended complaint mirrors these allegations, asserting that Mr. Rodriguez "routinely walked by [Mr. Edwards] and slapped [Mr. Edwards's] genitals with his hands. Mr. Rodriguez would also make comments to [Mr. Edwards] such as 'you better want my nuts in your mouth if you want to keep your job' or 'how do my nuts taste?'" (Doc. 25, p. 33). Although the amended complaint also alleges that "[Mr. Edwards] was subjected to unwelcome conduct based on sex by his male supervisors," this elaboration

13

does not render the claim unexhausted. (*Id.*, p. 34).

Rather, it constitutes an amplification of the same core allegations of sexual harassment and is "like or related to the allegations containing the charge." *Gregory*, 355 F.3d at 1280; *see Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 (focusing on the nature of the discriminatory acts rather than the precision of identifying specific claims or perpetrators and allowing a "sexual harassment claim to proceed even though the employee failed to check the 'sex' box on her EEOC charging form").

Thus, the court finds that Mr. Edwards has exhausted his administrative remedies.

### 2.    Sexual Harassment Claim

Parallel asserts, in a wholly conclusory manner and without citation to authority or substantive analysis, that Mr. Edwards fails to state a sexual harassment claim, arguing only that his allegations merely recite the elements without sufficient factual support. (Doc. 31, p. 14). To plead a sexual harassment claim, a plaintiff must show:

> (1) [he] belongs to a protected group; (2) [he] has been subject to unwelcome sexual harassment; (3) the harassment was based on [his] membership in a protected group; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of [his] employment and create an abusive working environment; and (5) a basis for holding the employer liable exists.

*Reeves*, 594 F.3d at 809.

### a.    Protected Group

Mr. Edwards is a member of a protected class. *See Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir. 1982) (indicating that in sex discrimination cases, a plaintiff must simply assert being a man or a woman); *Brill v. Lante Corp.*, 119 F.3d 1266, 1270 (7th Cir. 1997) (finding that all men and women are members of a protected class in sex discrimination cases); *Longariello v. Sch. Bd. of Monroe County, Fla.*, 987 F. Supp. 1448–49 (S.D. Fla. 1997) ("As a male, (plaintiff) clearly is a member of a protected class.").

### b.    Unwelcome Sexual Harassment

The EEOC defines conduct that may constitute sexual harassment as: "sexual advances, requests for sexual favors, and other verbal or physical conduct of sexual nature . . ." 29 C.F.R. § 1604.11(a). The employee must not solicit or incite the conduct and must regard the conduct as "undesirable or offensive." *Henson*, 682 F.2d at 903. Mr. Edwards alleges that Mr. Rodriguez repeatedly engaged in uninvited physical contact with his genitals and made explicit sexual remarks. (Doc. 25, p. 33). Nothing in the amended complaint suggests that Mr. Edwards solicited or incited this behavior. Thus, Mr. Edwards plausibly alleged that the sexual conduct was unwelcome, satisfying this element.

15

### c.    Membership in a Protected Group.

"The act of sexual harassment itself creates an inference that the harasser harbors a sexually discriminatory animus towards the plaintiff. When a person 'sexually harasses' another, i.e., makes comments or advances of an erotic or sexual nature, we infer that 'the harasser [is making] advances towards the victim because the victim is a member of the gender the harasser prefers." *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1246 (11th Cir. 1998) (quoting *Fredette v. BVP Mgmt. Associates*, 112 F.3d 1503, 1505 (11th Cir. 1997).

Mr. Edwards asserts that Mr. Rodriguez subjected him to repeated sexual touching and explicit sexual comments directed at him. (Doc. 25, p. 33). Such conduct gives rise to an inference of discriminatory animus based on sex, as sexual harassment itself supports the conclusion that the conduct occurred because of the plaintiff's membership in a protected group. *See Llampallas*, 163 F.3d at 1246.

### d.    Sufficiently Severe or Pervasive

Establishing this severity and pervasiveness requirement "includes a subjective and objective component." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008). The plaintiff must "subjectively perceive" the harassment to be severe and pervasive enough to alter the terms or conditions of his

16

employment, and the plaintiff's "subjective perception must be objectively reasonable." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). The court presumes, based on his allegations, that Edwards subjectively found his working environment to be abusive. *See Freese v. Wuesthoff Health Sys., Inc.*, No. 6:06CV175-ORL-31JGG, 2006 WL 1382111, at *5 (M.D. Fla May 19, 2006).

The court turns to the objective component of the analysis. The court considers the following four factors in the objective analysis: "(1) frequency of alleged conduct, (2) severity of the conduct, (3) 'whether the conduct is physically threatening or humiliating or a mere offensive utterance[,]' and (4) whether the conduct 'unreasonably interferes' with the plaintiff's performance at work." *MacMartin v. Marine Mgmt. Services, Inc.*, No. 3:22-CV-610-BJD-LLL, 2023 WL 9469635, at *8 (M.D. Fla. Feb. 7, 2023), *report and recommendation adopted as modified*, No. 3:22-CV-610-BJD-LLL, 2023 WL 9469397 (M.D. Fla. Mar. 21, 2023) (citing *Mendoza*, 195 F.3d at 1246. "[C]ourts should examine the conduct in context, not as isolated acts. And determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment." *Mendoza*, 195 F.3d at 1246.

17

### i.    Frequency

The Eleventh Circuit has found one incident per week to be sufficiently frequent, whereas an incident every two months to be insufficiently frequent. *Compare Johnson v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (fifteen instances in four months "was not infrequent") *with Mendoza*, 195 F.3d at 1249 (five inappropriate instances in eleven months were "far too infrequent" to support a sexual harassment claim). Sexual comments and only three incidents of physical contact are frequent enough to establish a sexual harassment claim. *See Olson v. Lowe's Home Centers Inc.*, 130 F. App'x 380, 388 (11th Cir. 2005).

Mr. Edwards alleges he was "routinely" slapped on the genitals and told crude remarks through the course of his employment, which was around three months. (Doc. 25, p. 33). Although Mr. Edwards does not provide an exact number of incidents, the term "routinely" implies recurring, not isolated behavior, and therefore, Mr. Edwards has plausibly alleged conduct that is sufficiently frequent to support a hostile work environment claim. *See Wiant v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1243 (M.D. Fla. 2013) ("At the motion to dismiss stage, the complaint is construed in the light most favorable to the plaintiff.").

### ii.   Severity

As the court has held, allegations of repeated unwanted touching in private areas is sufficiently severe and pervasive. *See Dar v. Associated Outdoor Club, Inc.*, No. 804CV1055T24TBM, 2005 WL 8160201, at \*6 (M.D. Fla. July 25, 2005) ("[G]iven . . . the fact that it was unwanted *physical* conduct, there is a genuine issue of material fact as to whether Plaintiff was subjected to a sexually hostile work environment due to people touching her butt."); *see also Johnson*, 234 F.3d at 509 (finding that unwanted massages and standing so close to the plaintiff so that the defendant's body parts touched her from behind was severe). Whereas "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Mr. Edwards alleges that he was routinely subjected to unwanted physical contact and crude sexual remarks throughout his employment. (Doc. 25, p. 33). This conduct goes well beyond the type of "simple teasing" or isolated comments that the court has found insufficiently severe or pervasive. Given the repeated contact with an intimate body area, coupled with the ongoing sexual remarks, the court finds that the alleged conduct is sufficiently severe and pervasive.

19

### iii.    Physically Threatening or Humiliating

"Grabbing the crotch area of either sex certainly conveys a message that extends beyond workplace crudity," which is physically threatening and humiliating. *Cobb v. Sunshine Rest. Merger Sub, LLC*, No. 8:09-CV-2639-T-26MAP, 2011 WL 87310, at *2 (M.D. Fla. Jan. 11, 2011) (comparing to cases that involve only brushing or touching). Further, harassment that occurs "in the presence of coworkers" is especially humiliating. *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1155 (11th Cir. 2020). The Eleventh Circuit has acknowledged that "most people have a special sense of privacy in their genitals." *Adams v. Sch. Bd. of St. John's Cnty.*, 57 F.4th 791, 805 (11th Cir. 2022) (en banc).

Mr. Edwards alleges that he was routinely slapped on the genitals in the workplace, conduct that he alleges is both physically invasive and inherently humiliating. (Doc. 25, p. 33). To the extent this conduct occurred in the presence of coworkers, it would further exacerbate the humiliation, as harassment carried out publicly is especially degrading. *See Fernandez*, 961 F.3d at 1155. The court finds that Mr. Edwards has alleged conduct that is physically threatening and humiliating.

### iv.    Interference

When determining whether the alleged conduct unreasonably interfered with an individual's performance at work, the Supreme Court has noted that

20

an "abusive work environment can 'detract from an employee's job performance, discourage employees from remaining on the job, or keep them from advancing their careers.'" *Harris*, 510 U.S. at 22. An employee's mental well-being is relevant and "may be taken into account . . ." *Id.* at 23. "[T]he conduct in question need not have tangibly affected the plaintiff's job performance in order to be actionable." *Reeves v. C.H. Robinson Worldwide, Inc.*, 525 F.3d 1139, 1147 (11th Cir. 2008), *reh'g en banc granted, opinion vacated*, 569 F.3d 1290 (11th Cir. 2009), *on reh'g en banc,* 594 F.3d 798 (11th Cir. 2010) (finding that conduct making it difficult for the plaintiff to concentrate was sufficient interference with job performance).

In his amended complaint, Mr. Edwards alleges that "[t]he sexually harassing conduct was severe and/or pervasive and altered the terms and conditions of [his] employment, creating an intimidating, hostile, and abusive work environment." (Doc. 25, p. 34). Mr. Edwards also stated that "a reasonable person in [his] position would find the work environment hostile or abusive. (*Id.*). Mr. Edwards alleges repeated, unwanted physical contact involving his genitals, coupled with ongoing crude sexual remarks—conduct that is inherently distracting, degrading, and likely to impair an employee's ability to focus and perform job duties. (*Id.*). Accordingly, Mr. Edwards has plausibly alleged that the harassment unreasonably interfered with his job

21

performance.

Lastly, the court considers the totality of the circumstances to determine whether the harassment Mr. Edwards faced was objectively severe or pervasive enough to alter the terms or conditions of his employment. *See Mendoza*, 195 F.3d at 1246. For purposes of surviving a motion to dismiss, the court is satisfied that it could. Thus, Mr. Edwards has plausibly alleged the fourth element to plead a sexual harassment claim.

### e.    Basis for Accountability

As to this factor, if the sexual harassment is committed by a co-worker, "there is a basis for holding the employer liable 'if it knew or should have known of the harassing conduct but failed to take prompt remedial action.'" *Burgeson v. Collier Cnty.*, No. 2:09-CV-220-FTM-36DNF, 2011 WL 13175531, at *4 (M.D. Fla. Mar. 15, 2011) (quoting *Kenworth of Dothan, Inc.*, 277 F.3d at 1278). An employer is liable for sexual harassment if they "knew or should have known of the harassment and failed to take prompt remedial action." *Faragher v. City of Boca Raton*, 76 F.3d 1155, 1167 (11th Cir.), *reh'g en banc granted, opinion vacated*, 83 F.3d 1346 (11th Cir. 1996), *and on reh'g en banc,* 111 F.3d 1530 (11th Cir. 1997), rev'd, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998). "A plaintiff can prove an employer's knowledge of harassment by showing that [he] complained to higher management." *Id.*

22

Mr. Edwards alleges that he opposed Mr. Rodriguez's conduct. (Doc. 25, p. 39).[2] Such allegations are sufficient to plausibly establish that Parallel had actual knowledge of the harassment. Despite this notice, Mr. Edwards alleges that the harassment continued, supporting an inference that Parallel failed to take prompt remedial action. (*Id.*, p. 37).

Accordingly, Mr. Edwards plausibly alleges a sexual harassment claim under Title VII and the FCRA. Parallel's motion to dismiss Counts VII and VIII is **DENIED**.

## C.      Counts IX and X

Mr. Edwards asserts a claim for retaliation under Title VII and the FCRA, alleging that he suffered adverse action after opposing sexual harassment (Counts IX and X). The Court analyzes Title VII and FRCA claims under the same framework. *Gamboa*, 170 F App'x at 611.

### 1.      Exhaustion of Administrative Remedies

The parties dispute whether Mr. Edwards exhausted his administrative remedies. Parallel contends that Mr. Edwards failed to do so because his amended complaint introduces allegations of adverse employment actions that

---

[2] Mr. Edwards describes, under a different count, that he opposed Mr. Rodriguez's actions by complaining to management and HR about the sexual harassment. Factual allegations of one count can inform the meaning of factual allegations of another count. *See States v. Schmitz*, 634 F.3d 1247, 1263 n. 10 (11th Cir. 2011).

23

were not included in his EEOC Charge. (Doc. 31, p. 12). Mr. Edwards responds that he provided sufficient factual detail in his EEOC Charge that a reasonable EEOC investigation would have uncovered the later-alleged adverse employment actions, thereby satisfying the administrative prerequisites to suit. (Doc. 36, pp. 15–16).

As stated above, "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Alexander*, 207 F.3d at 1332. At the same time, judicial complaints "may encompass any kind of discrimination like or related to the allegations containing the charge." *Gregory*, 355 F.3d at 1280 (referring to *Sanchez*, 431 F.2d at 466. Consistent with this principle, "[c]ourts are . . . 'extremely reluctant to allow procedural technicalities to bar claims brought under (Title VII).'" *Gregory*, 355 F.3d at 1280 (quoting *Sanchez*, 431 F.2d at 460–61). "A plaintiff is not required to identify every possible incident of retaliation in the administrative charge to raise a retaliation claim." *Mcgriff v. Vystar Credit Union*, No. 3:25-CV-70-TJC-LLL, 2026 WL 598623, at *1 (M.D. Fla. Mar. 4, 2026).

Accordingly, Mr. Edwards did not need to list every possible adverse employment action. *See Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018) (The standard is whether the claim is "like or related to, or grew out

24

of, the allegations contained in [the] EEOC charge.").

### 2.   Retaliation

To establish a prima facie case of retaliation, the plaintiff must show that he "(1) engaged in a statutorily protected activity; (2) that [he] suffered a materially adverse employment action; and (3) that there was a causal link between the two." *Lee v. HQM of Fort Myers, LLC*, No. 2:11-CV-714-FTM-99, 2012 WL 3545700, at *2 (M.D. Fla. July 26, 2012), *report and recommendation adopted*, No. 2:11-CV-00714-UA-DNF, 2012 WL 3548062 (M.D. Fla. Aug. 16, 2012).

### a.   Statutorily Protected Activity

"Indeed, protected activity includes voicing a complaint to superiors about alleged discrimination." *Garcia v. Operating*, No. 8:24-CV-02981-WFJ-TGW, 2025 WL 1394242, at *3 (M.D. Fla. May 14, 2025) (finding that the plaintiff engaged in a protected activity by reporting an instance of discrimination to his direct supervisors); *Bolton v. Baldwin Cnty. Pub. Sch.*, 627 F. App'x 800, 803 (11th Cir. 2015) ("Protected activities include…the voicing informally of a complaint to superiors, or the use of an employer's internal grievance procedure to report alleged discrimination."). Additionally, complaining to HR is a protected activity. *See Cid v. City of Miramar*, Fla., 810 F. App'x 816, 821 (11th Cir. 2020).

Mr. Edwards alleges he opposed Mr. Rodriguez's conduct by reporting the alleged harassment to both management and HR. (Doc. 25, p. 39). These allegations plausibly establish that Mr. Edwards engaged in statutorily protected activity. His complaints to management and HR fall squarely within the types of conduct recognized as protected under Eleventh Circuit precedent. Accordingly, Mr. Edwards has sufficiently alleged the first element of a retaliation claim.

### b.      Materially Adverse Employment Action

"An adverse employment action is a 'serious and material change in terms, conditions or privileges of employment.'" *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 800 (11th Cir. 2014) (quoting *Holland v. Gee*, 677 F.3d 1047, 1056 (11th Cir. 2012). Typically, they involve "a significant change in employment status, such as hiring firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* However, reprimands, negative evaluations, threats of job loss and suspensions without pay, exclusions from meetings, and removal of job duties—even in the aggregate—are not. *See Akins v. Fulton Cnty.*, 420 F.3d 1293, 1300–02 (11th Cir. 2005) (applying *Stavropoulos v. Firestone*, 361 F.3d 610 (11th Cir. 2004). "Undoubtedly, termination is an adverse employment action." *Rohrer*, 2008 WL 11385397, at *9.

26

Mr. Edwards alleges that he was subject to many adverse employment actions, including "increased scrutiny, discipline, negative performance evaluations, denial of opportunities, reduction in hours or responsibilities, suspension, and/or termination." (Doc. 25, pp. 39–40). Parallel argues these allegations are "merely a boilerplate list of examples of adverse employment actions," and thus, Mr. Edwards's claim should be dismissed for failing to plead factual support. (Doc. 31 p. 13).

The Supreme Court has made it clear that to survive a motion to dismiss, a plaintiff is not required to allege facts specific to the prima facie case. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (explaining that the *McDonnell Douglas* burden-shifting analysis for establishing a prima facie case "is an evidentiary standard, not a pleading requirement"); *see also Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011) ("A complaint in an employment discrimination case need not contain specific facts establishing a prima facie case under the evidentiary framework for such cases to survive a motion to dismiss."). The complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 127 S. Ct. 1955 at 1974. Therefore, accepting Mr. Edwards's allegations as true, he has plausibly alleged that he suffered an adverse employment action.

27

### c.    Causal Link

In demonstrating causation, a plaintiff must show "her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tx. Sw. Med. Ctr. V. Nassaar*, 570 U.S. 338, 362 (2013). "[A] plaintiff must prove that had she not [engaged in the protected conduct], she would not have been fired." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018). To establish a causal connection, a plaintiff must give evidence that: "(1) the decision-makers responsible for the adverse actions were aware of the protected activity; and (2) the adverse acts were at least somewhat related and in close temporal proximity to the protected activity." *Smith v. Quintiles Transnat'l Corp.*, 509 F. Supp. 2d 1193, 1203 (M.D. Fla. 2007).

Mr. Edwards alleges "[t]here is a causal connection between [his] protected activity and the adverse employment actions, as shown by temporal proximity, retaliatory animus, shifting or pretextual explanations, disparate treatment, and/or pattern of antagonism following Plaintiff's complaints." (Doc. 25, p. 40). Although Mr. Edwards does not provide additional context or circumstantial evidence beyond this allegation, the factual allegations of one count can inform the meaning of factual allegations of another count. *See Schmitz*, 634 F.3d at 1263 n. 10. Drawing on the factual allegations set forth in Counts IV–VI, Mr. Edwards has plausibly alleged that Parallel was aware

28

of his protected conduct by virtue of his HR complaint. Mr. Edwards alleged that his termination occurred eight days after he reported concerns to HR. (Doc. 25, pp. 4–5). As already established in the analysis of Counts IV–VI, this temporal proximity is sufficient to satisfy the relatedness requirement at the pleading stage.

Thus, having plausibly alleged all three elements, Mr. Edwards's amended complaint states a claim for retaliation under Title VII and the FCRA. Parallel's motion to dismiss Counts IX and X is **DENIED**.

## IV.    CONCLUSION

Accordingly, it is **ORDERED** that Parallel's Motion to Dismiss is **GRANTED in part and DENIED in part** as follows:

1.    The Court **DISMISSES** Counts I, II, and III **with prejudice**.

2.    The Court **DENIES** Parallel's Motion to Dismiss as to Counts IV, V, VI, VII, VIII, IX, and X.

3. Consistent with Rule 12(a)(4)(A), Parallel must file its answer to Counts IV through X no later than **April 30, 2026**.

**ORDERED** in Tampa, Florida, on April 16, 2026.

_Amanda Arnold Sansone_
AMANDA ARNOLD SANSONE
United States Magistrate Judge

29